UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA        CRIMINAL NO. 3:15CR195(JBA)

v.

MOHSEN YOUSSEF           April 25, 2017

**MEMORANDUM IN OPPOSITION TO MOTION FOR REVOCATION OF
DETENTION ORDER**

The government opposes the defendant's motion for revocation of the detention order entered on April 14, 2017. As described below, the defendant, Mohsen Youssef, moved from Connecticut to Canada in 2014 at least in part to avoid criminal prosecution in the United States. He did not return to Connecticut until his extradition last month. He thus has forfeited his ties to this community and demonstrated a willingness to flee from prosecution. Moreover, because Mr. Youssef is a Egyptian national, the United States government has no means of preventing him from obtaining an Egyptian travel document and fleeing to Egypt, where he continues to have significant ties. Short of detention, there is thus no condition or combination of conditions that will reasonably assure the defendant's appearance in court as ordered.

I.    **Factual and Procedural Background**

The defendant was born in Egypt in 1990. In 2004, when he was 14 years old, he moved to Virginia. In 2009, Mr. Youssef moved to Connecticut with his father and

two of his three brothers. Mr. Youssef became a naturalized citizen of the United States on July 10, 2013.

As alleged in the indictment, beginning in 2011, Mr. Youssef designed and executed a multiyear scheme to fraudulently obtain millions of dollars in financing for his company, Amoun Pita and Distribution LLC ("Amoun Pita"), which purported to be a flourishing pita bread manufacturer in South Windsor, Connecticut. (Exhibit 1) In truth, Amoun Pita did virtually no business. Mr. Youssef procured the financing through an intricate web of misrepresentations concerning Amoun Pita's finances and prospects for growth. For example, in applying for a $300,000 loan and $100,000 matching grant from the State of Connecticut Department of Economic and Community Development, the defendant submitted a doctored bank statement purporting to show an average balance of over $200,000 in Amoun Pita's business bank account in October 2012. (Exhibit 2) In fact, records received from the bank show that account had an average balance of just $33.62. (Exhibit 3) Similarly, in applying for a loan of approximately $680,000 from Wells Fargo Bank N.A. ("Wells Fargo"), the defendant submitted a falsified bank statement showing an average balance in December 2012 of approximately $858,733. (Exhibit 4) In fact, the actual average balance that month was $94.79. (Exhibit 5) In applying for a second loan from Wells Fargo (this time for approximately $596,000), Mr. Youssef provided the bank with falsified financial statements for Amoun Pita that purported to be reviewed by a well-known accounting firm, UHY LLP ("UHY"). (Exhibit 6) In fact,

UHY has never performed any work for the defendant or Amoun Pita.[1] In total, the defendant fraudulently obtained over $3 million from various lenders (in addition to several million dollars of intended loss resulting from loans he applied for but ultimately did not obtain).

On April 11, 2014, while still actively defrauding lenders, the defendant placed an unsolicited call to the United States Attorney's Office in New Haven, Connecticut. The defendant spoke with the Assistant United States Attorney who was responsible for responding to citizen questions, complaints, and other incoming telephone calls that day (the "Duty AUSA"). The defendant asked if there were any pending cases involving him and whether, if there were an active warrant for his arrest, it would be listed on any public databases. The Duty AUSA truthfully informed the defendant that there were no public criminal cases against him at the time, and that an arrest warrant would not necessarily be public. The defendant then asked whether, if there were an active warrant for his arrest, he would be stopped at an airport if he tried to board a plane. The Duty AUSA said that was certainly possible. The very same day, the defendant wired a $35,000 retainer to a criminal defense attorney in Connecticut. (Exhibit 7)

At some point shortly after this telephone call, the defendant left Connecticut and moved to Montreal, Canada. Although Montreal is only a five-hour drive from

---

[1] These examples are intended merely to be illustrative of Mr. Youssef's deceptions and the strength of the government's evidence. Of course, the government has other evidence that it intends to introduce at trial.

the Hartford area, the defendant never returned to Connecticut to visit his family or for any other purpose.

On October 22, 2015, a grand jury in New Haven, Connecticut, returned a fourteen-count indictment charging the defendant with violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1344 (bank fraud). Because the defendant was in Canada, the indictment was sealed while the government worked toward his extradition back to the United States. On March 1, 2017, the defendant was arrested by local authorities in Montreal. He did not contest extradition and was returned to the United States on April 5, 2017. That was his first time back in this country since leaving in 2014 after his telephone call to the United States Attorney's Office.

The defendant made his initial appearance before the Honorable Robert A. Richardson, United States Magistrate Judge, on April 6, 2017.[2] At the government's request, and without objection from the defendant, Judge Richardson entered an order of detention without prejudice to the defendant's ability to seek release at a later time. The defendant thereafter filed a motion for release, and a hearing was held on April 14, 2017. After the hearing, Judge Richardson ordered the defendant detained, ruling that the government had proven by a preponderance of the evidence that no condition or combination of conditions could reasonably assure the defendant's appearance in court as required. This motion for revocation of Judge Richardson's detention order followed.

---

[2] The defendant appeared before Judge Richardson because his port of entry into this District (and the United States) was Bradley International Airport in Windsor Locks, Connecticut.

## II.     Legal Standard

Pretrial detention is appropriate if the government shows by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance in court as required. 18 U.S.C. § 3142(e). The relevant factors to be considered include the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the defendant's history and characteristics, including his ties to the community, family ties, financial resources, and criminal history; and whether at the time of the current offense, the defendant was on probation, parole, or other form of release in a judicial proceeding. 18 U.S.C. § 3142(g). A district court reviews *de novo* a magistrate judge's order of pretrial release or detention. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)

## III.     Discussion

The defendant's telephone call to the United States Attorney's Office in 2014, his wiring of a $35,000 retainer to a criminal defense attorney in Connecticut the same day, and his subsequent relocation to Canada strongly suggest that he fled the United States to avoid criminal prosecution. This inference is strengthened by the fact that, in the intervening three years, Mr. Youssef never once returned to this country to visit his family or for any other reason—even though it is only a five-hour drive from Montreal to the Hartford area. The defendant was concerned that, as a result of his extensive fraudulent activity, he was the target of a non-public investigation and would be arrested in the United States.

Mr. Youssef now has an even greater incentive to flee. As reflected herein and in the attached exhibits, the evidence against the defendant is very strong. If convicted, he faces statutory maximum penalties of 20 years on the mail and wire fraud counts charged in the indictment, and 30 years on the bank fraud counts. Based on an initial calculation, his advisory range under the Sentencing Guidelines appears to be approximately seven or eight years of imprisonment. In addition, he faces a significant potential fine and a multimillion dollar restitution order.

Nor does the defendant have the kind of community ties that would tether him to Connecticut. Although he lived in Connecticut for five years and has family here, those ties evidently were insufficient to deter him from moving to Canada in 2014, and he has not returned in the past three years. It is implausible to imagine he would not again choose to leave behind his family in Connecticut, and abandon whatever ties to this state and country he once had, if given the opportunity to do so.

The conditions the defendant proposes do not adequately mitigate the risk of flight. It is relatively simple to cut off a GPS bracelet, and although the United States Probation Office would be alerted that the bracelet had been tampered with, law enforcement would be several hours behind the defendant once they determined that he escaped. Although the defendant has surrendered his Egyptian passport, the government cannot prevent him from obtaining a new Egyptian passport, and in all likelihood will not even be notified if he does so. The defendant claims that "the Egyptian deputy counsel in Houston . . . confirmed that there is a procedure for placing a hold on Egyptian passports in these circumstances." Def. Mot. at 9. But the

6

Department of Justice's Office of International Affairs ("OIA") is aware of no such mechanism. In any event, the Egyptian government would have no enforceable obligation to notify the United States of any passport application by the defendant (or to deny any such application). There is an extradition treaty between the United States and Egypt that entered into force in 1875, but per OIA, no one has ever been extradited under the treaty in either direction. According to OIA, in practice, Egypt does not extradite its nationals to the United States. Hence, if the defendant fled to Egypt, the United States would be unable to recapture him.

Although the defendant asserts that "Egypt is not home," Def. Mot. at 1, neither is the United States at this point. Further, the defendant cannot fully disclaim his ties to Egypt. The defendant grew up in Egypt. It appears that he still has family there. Indeed, in June 2014, the defendant wired nearly $30,000 to Egypt for "family support." (Exhibit 8) These deep connections to Egypt—coupled with the other factors described herein, especially the defendant's previous flight from the United States to avoid prosecution—make flight a serious risk in this case. Accordingly, the government respectfully asks the Court to find that there is no condition or combination of conditions that will reasonably assure the defendant's presence in court as required, and to affirm Judge Richardson's detention order.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

7

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
avi.m.perry@usdoj.gov
203-821-3700
Fax: 203-773-5377
Federal Bar No. phv07156

<u>CERTIFICATE OF SERVICE</u>

       This is to certify that on April 25, 2017, a copy of the foregoing Memorandum in Opposition to Motion for Revocation of Detention Order was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY

9