UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:15CR195(JBA) |
| v. | |
| MOHSEN YOUSSEF | May 18, 2017 |

### RESPONSE TO MOTION FOR DETENTION HEARING

The defendant, Mohsen Youssef, has filed a motion seeking to resume the detention hearing that was continued on May 11, 2017. The Government's position remains that detention is warranted because there is no condition or combination of conditions that will reasonably assure the defendant's appearance in court as ordered.

As the Court is aware, the Government contends that Mr. Youssef already left the United States once to avoid criminal prosecution. The Government now has new evidence concerning the relevant timeline.

On January 3, 2014, a New Haven law firm representing UHY LLP (an accounting firm) mailed a letter to the defendant and various financial institutions. *See* Ex. 1. The letter stated that UHY had become aware of an audit report purportedly prepared by UHY for Amoun Pita (the defendant's company), which was not a UHY client. *See id.* On January 23, 2014, Wells Fargo Bank (one of the banks that received the UHY letter, and the alleged victim in Counts 3 to 5 of the indictment) filed suit against Amoun Pita and the defendant personally.

1

On April 11, 2014, Mr. Youssef called the United States Attorney's Office in New Haven to inquire whether (1) he was the target of an investigation; (2) there were any active warrants for his arrest; and (3) if any such warrants existed, he would be stopped from boarding a flight. That same day, Mr. Youssef wired a $35,000 retainer to a criminal defense attorney in Connecticut. *See* Ex. 2. Five days later, he began transferring money from a domestic account at Bank of America to an account in his name at the Royal Bank of Canada. *See id.* In total, between April and August 2014, the defendant moved over $790,000 to his Canadian bank account. *See* Exs. 2, 3, 4, 5. Evidently, he relocated to Canada around the same time. He began using a debit card in Montreal on April 18, 2014 (just one week after calling the United States Attorney's Office). *See* Ex. 6. The defendant's bank records from the following week show a series of payments to the Registraire des Entreprises in Quebec (the government authority responsible for registering businesses in Quebec), as well as to an immigration law firm in Montreal (Brunel Immigration). *See id.* Records from the Registraire des Entreprises show that Mr. Youssef took the initial steps to incorporate Amoun Foods (Les Nourriture Amoun) in Quebec on April 24, 2014.

But as alleged in the indictment, the defendant's move to Canada did not hinder his scheme to defraud. In fact, in July 2014 (as alleged in Count 9 of the indictment), the defendant fraudulently obtained $420,000 from Summit Funding Group. He wired $265,000 of the proceeds to his Canadian bank account. *See* Ex. 4. In August 2014 (as alleged in Count 14 of the indictment), he fraudulently obtained

2

$355,000 from Signature Bank. He immediately wired the entire proceeds to his Canadian bank account. *See* Ex. 5.

The takeaway is that the defendant left the United States in an attempt to dodge both civil litigation and criminal prosecution. He subsequently transferred almost $800,000 to a Canadian bank account—money that the Government has not been able to trace. He lost no time reestablishing his company in Canada, and on at least two occasions over the summer of 2014, he allegedly defrauded two victims out of roughly the amount his family now proposes to post as bond ($400,000). In light of his adaptability and previous successes (even when there was pending, public litigation against him), the defendant may believe he could again come up with $400,000 to repay his family if he flees and they lose their bond.

In sum, in light of the defendant's previous conduct, there is good reason to conclude he is a flight risk. Having lived in Canada for the past three years, he no longer has the type of ties to Connecticut that ordinarily would support release. The Government concedes that the defendant's renunciation of his Egyptian citizenship makes it less likely that he will flee *to Egypt*. But that is not the standard here. The defendant still could flee and remain in the United States, or else return to Canada, where he still has significant ties. As the Court is aware, many people live in both countries without legal status. Hence, the Government respectfully requests that the Court affirm the detention order.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*/s/ Avi Perry*

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
avi.m.perry@usdoj.gov
203-821-3700
Fax: 203-773-5377
Federal Bar No. phv07156

<u>CERTIFICATE OF SERVICE</u>

      This is to certify that on May 18, 2017, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY